UNITED  STATES  DISTRICT  COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DIRECTV, Inc. | ) | 1: 03-CV-5670-REC-SMS |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATION RE: |
| v. | ) | PLAINTIFF'S MOTION FOR DEFAULT |
| | ) | JUDGMENT (DOC. 43) |
| Robert Loomis, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

    Plaintiff is proceeding with a civil action in this Court.
The matter has been referred to the Magistrate Judge pursuant to
28 U.S.C. § 636(b) and Local Rule 72-302(c)(19).

    I. Procedural History

    On May 23, 2003, Plaintiff filed its complaint for damages.

    On October 2, 2003, Plaintiff filed a proof of service as to
Defendant Robert Loomis. The proof shows that on September 18,
2003, at 9:20 a.m., the summons and complaint were left with Ron
Roper, a person at least eighteen years of age and apparently the
person in charge of the business at 3999 N. Chestnut Diagonal,
Number 2357. Copies were mailed, postage prepaid, to Defendant
Loomis at the same address on September 19, 2003. The person
serving the documents was identified and was a registered

1  California Process server; the proof was declared to be true
2  under penalty of perjury and was dated September 19, 2003. The
3  server executed a declaration of due diligence indicating that
4  attempts to serve at a superseded address were made on August 16,
5  2003, and at the new address (a Derrel's mini-storage facility
6  where Defendant had a post office box) on six different days in
7  September 2003. This service is sufficient pursuant to Fed. R.
8  Civ. P. 4(e)(1) and Cal. Civ. Proc. Code § 415.20(b) (providing
9  1) for service in lieu of personal delivery by leaving a copy of
10 the summons and complaint with a person at least eighteen years
11 of age at one's usual mailing address other than a United States
12 Postal Service post office box, with the person apparently in
13 charge, informing the person of the contents, and thereafter
14 mailing a copy of the documents by first-class mail, postage,
15 prepaid, to the person to be served at the place where the copies
16 of the documents were left; and 2) that service in this manner is
17 deemed complete on the tenth day after mailing). A signed return
18 or proof of service has been held to constitute prima facie
19 evidence of valid service which can be overcome only by strong
20 and convincing evidence. O'Brien v. R. J. O'Brien & Assocs.,
21 Inc., 998 F.2d 1394, 1398 (7th Cir. 1993). Thus, Plaintiff has
22 established that effective service was established as of
23 September 29, 2003.
24     On January 28, 2004, Plaintiff requested the entry of
25 Defendant Loomis's default. A declaration of counsel established
26 that Plaintiff's counsel had not received any response, and
27 counsel was informed and believed that Defendant failed to file a
28 response to the complaint. Thus, Defendant had failed to answer

1  the complaint in the period of time permitted by Fed. R. Civ. P.

2  12(a)(1). The request for entry of default was served on

3  Defendant at the same address.

4  　　　　Default was entered by the Clerk on January 30, 2004.

5  　　　　On March 15, 2005, Plaintiff filed a motion for a default

6  judgment against Defendant Loomis in the amount of $20,000.00,

7  representing statutory damages, plus post-judgment interest, and

8  attorney's fees in the amount of $2,254.28 pursuant to 18 U.S.C.

9  § 2520(b)(3). Plaintiff stated it would file a bill of costs

10 pursuant to Fed. R. Civ. P. 54 if it prevailed. Plaintiff also

11 filed a memorandum and declarations of Kimberly R. Colombo and

12 Jaime Sichler in support of the motion. All the documents were

13 served on Defendant Loomis at the address at which the complaint

14 was served.

15 　　　　The motion of Plaintiff for default judgment against

16 Defendant Loomis came on regularly for hearing on June 3, 2005,

17 at 9:30 a.m., in Courtroom 4 before the Honorable Sandra M.

18 Snyder, United States Magistrate Judge. Brandon Tran appeared

19 telephonically on behalf of Plaintiff; there was no appearance on

20 behalf of Defendant. Mr. Tran represented that Plaintiff had had

21 no contact with Defendant Loomis. Before argument was presented,

22 the Court informed Plaintiff's counsel of the need for additional

23 authorities and further documentation on the issue of attorney's

24 fees. Plaintiff was given leave to submit additional authorities

25 and documentation, and the matter was set for further hearing.

26 　　　　Plaintiff timely submitted a supplemental memorandum of

27 points and authorities and declarations of Brandon Q. Tran and

28 Michelle Stone on June 17, 2005. Further hearing on the motion

1 was vacated.

2    Plaintiff's motion for default judgment against Defendant
3 Marino, the sole remaining defendant in the action, is stayed
4 because Defendant Marino is in bankruptcy.

5    II. <u>Default Judgment</u>

6    A court has the discretion to enter a default judgment
7 against one who is not an infant, incompetent, or member of the
8 armed services where the claim is for an amount that is not
9 certain on the face of the claim and where 1) the defendant has
10 been served with the claim; 2) the defendant's default has been
11 entered for failure to appear; 3) if the defendant has appeared
12 in the action, the defendant has been served with written notice
13 of the application for judgment at least three days before the
14 hearing on the application; and 4) the court has undertaken any
15 necessary and proper investigation or hearing in order to enter
16 judgment or carry it into effect. Fed. R. Civ. P. 55(b); <u>Alan</u>
17 <u>Neuman Productions, Inc. v. Albright</u>, 862 F.2d 1388, 1392 (9th
18 Cir. 1988). Factors that may be considered by courts in
19 exercising discretion as to the entry of a default judgment
20 include the nature and extent of the delay, <u>Draper v. Coombs</u>, 792
21 F.2d 915, 924-925 (9th Cir. 1986); the possibility of prejudice to
22 the plaintiff, <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th
23 Cir.1986); the merits of plaintiff's substantive claim, <u>id.</u>; the
24 sufficiency of the allegations in the complaint to support
25 judgment, <u>Alan Neuman Productions, Inc.</u>, 862 F.2d at 1392; the
26 amount in controversy, <u>Eitel v. McCool</u>, 782 F.2d at 1471-1472;
27 the possibility of a dispute concerning material facts, <u>id.</u>;
28 whether the default was due to excusable neglect, <u>id.</u>; and the

4

strong policy underlying the Federal Rules of Civil Procedure that favors decisions on the merits, id.

A default judgment generally bars the defaulting party from disputing the facts alleged in the complaint, but the defaulting party may argue that the facts as alleged do not state a claim. Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392. Thus, well pleaded factual allegations, except as to damages, are taken as true; however, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default. Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992); TeleVideo Systems, Inc. av. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).

A. Notice

Here, as previously detailed, Defendant Loomis has been served with the claim; his default has been entered for failure to appear; and even though Defendant Loomis has not appeared in the action, he has been timely served with written notice of the application for judgment. In the complaint, Plaintiff sought a judgment of $10,000.00 for each of two pirated access devices, (Complt. at 3, 10); thus, the Court finds that Defendant was given adequate notice pursuant to Fed. R. Civ. P. 55(d) and 54(c), which require that a judgment by default shall not be different in kind from or exceed in amount that prayed for in the complaint. Plaintiff expressly sought in the complaint the types of relief (statutory damages, compensatory damages, punitive damages, and attorney's fees and costs) sought herein. Plaintiff also alleged that Defendant possessed two devices, and the complaint sought statutory damages of $10,000.00 for each device

possessed. The fact that the complaint does not allege a specific total sum does not prevent entry of a default judgment for a sum that can be made certain where appropriate notice has otherwise been given. See <u>Appleton Elec. Co. v.Graves Truck Line</u>, 635 F.2d 603, 611 (7th Cir. 1980).

B. <u>Military Status</u>

Kimberly R. Colombo, counsel for Plaintiff, declares under penalty of perjury that she has personal knowledge that Plaintiff is not an infant or incompetent person, in the military service, or otherwise exempted under the Servicemembers Civil Relief Act of 1940, 50 App. U.S.C. §§ 501, 521. It appears that Colombo obtained the information regarding Defendant's status from a website operated by the Department of Defense Manpower Data Center that provides information concerning the military service status of individuals. The Court finds that Defendant is not exempt from entry of default judgment.

C. <u>Sufficiency of the Claim</u>

Plaintiff seeks damages pursuant to 18 U.S.C. §§ 2511 and 2520; only if the Court is not inclined to award such damages does Plaintiff request an award pursuant to 47 U.S.C. § 605(a). (Memo. at 2.)

As a preliminary matter, this Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claim arises under the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2510-2521.

Plaintiff alleged that on May 25, 2001, Plaintiff executed, with the assistance of local law enforcement, writs of seizure at the mail shipping facility used by sources of pirate technologies

and thereby came into possession of sales records that evinced Defendant's purchase of illegal pirate access devices. On or about March 26, 2001, Defendant purchased two pirate access devices, each consisting of a printed circuit board device, one of which is called a "Terminator Emulator," and one of which is called a "Terminator SU2 Unlooper," from DSS-Stuff. The devices were shipped to Plaintiff at his address in Clovis, California. Plaintiff illegally used modified DIRECTV access cards and other pirate access devices designed to permit viewing of Plaintiff's television programming without authorization or payment by Plaintiff. Defendant's activities violated 18 U.S.C. §§ 2510-2521. (Cmplt. at 1-3.)

In the second claim, Plaintiff alleged that by using the devices to decrypt and view Plaintiff's satellite transmissions of television programming, Defendant intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept Plaintiff's satellite transmission of television programming in violation of 18 U.S.C. § 2511(1)(a). Defendant knew or should have known that the interception was illegal and prohibited. (Id. at 7-8.)

In the third claim, Plaintiff alleges that Defendant used the access devices to view satellite transmissions with intent to avoid payment of lawful charges, by trick, artifice, deception, and other fraudulent means, without Plaintiff's consent, and thereby violated 18 U.S.C. § 2512(1)(b). (Id. at 8.)

In both claims, Plaintiff alleges that the violations injured and will continue to injure Plaintiff by depriving Plaintiff of subscription and pay-per-view revenues and other

valuable consideration, compromising Plaintiff's security and
accounting systems, infringing Plaintiff's trade secrets and
proprietary information, and interfering with Plaintiff's
contractual and prospective business relations. (Id. at 8.)

Title 18 U.S.C. § 2511, a criminal statute, prohibits the
interception and disclosure of wire, oral, or electronic
communications and provides in pertinent part:

> (1)(a)... any person who intentionally intercepts,
> endeavors to intercept, or procures any other person
> to intercept or endeavor to intercept, any wire, oral,
> or electronic communication... shall be punished as
> provided in subsection (4) or shall be subject to suit
> as provided in subsection (5).

Title 18 U.S.C. § 2520(a) provides that "any person whose
wire, oral, or electronic communication is intercepted,
disclosed, or intentionally used in violation of the chapter may
in a civil action recover from the person or entity... which
engaged in that violation such relief as may be appropriate." A
corporation qualifies as a person within the meaning of § 2520.
18 U.S.C. § 2510(6). Sections 2511 and 2520 have been interpreted
to authorize a private cause of action. DIRECTV, Inc. v. Kimball,
312 F.Supp.2d 1043, 1045-46 (W.D.Tenn.2004) (noting that even
courts that decline to permit a civil action for violation of §
2512, which prohibits possession of piracy devices, permit a
civil action to remedy violations of § 2511 because the acts
proscribed (interception, disclosure, intentional use) appear in
both §§ 2511 and 2520); DIRECTV, Inc. v. Hosey, 289 F.Supp.2d
1259, 1264 (D.Kan.2003); DIRECTV, Inc. v. Childers, 274 F.Supp.2d
1287 (M.D.ALA 2003); DIRECTV, Inc. v. Cardona, 275 F.Supp.2d
1357, 1367 (M.D.Fla.2003). See also In the Matter of DIRECTV,

1 Inc., 2004 WL 2645971, at *7 (N.D.Cal. 2004). At least one court
2 has held that no private cause of action exists for violations of
3 § 2511 in the commercial context. DIRECTV, Inc. v. DeCroce, 332
4 F.Supp.2d 715 (D.N.J. 2004). However, the list of decisions
5 appended to Plaintiff's motion reveals that this case is against
6 the great weight of authority.

7 Plaintiff has alleged that it is a corporation that is the
8 nation's leading direct broadcast satellite system, delivering
9 over 225 channels of television and other programming to more
10 than ten million homes and businesses in the United States.
11 Satellite transmissions are electronic communications protected
12 under the ECPA. United States v. Lande, 968 F.2d 907, 909-10 (9th
13 Cir. 1992). Plaintiff alleged that Defendant purchased and used
14 pirate access devices to view programs without authorization by
15 or payment to DIRECTV; Defendant intentionally, and with
16 knowledge or reason to know it was illegal and prohibited,
17 intercepted, endeavored to intercept, or procured others to
18 intercept or endeavor to intercept Plaintiff's satellite
19 transmission of television programming, thereby injuring
20 Plaintiff.

21 The Court finds that Plaintiff has stated a claim pursuant
22 to 18 U.S.C. §§ 2511 and 2520(a).

23 D. Damages

24 Title 18 § 2520(a) creates the private cause of action.
25 Section 2520 further provides in pertinent part:

26 (b) Relief.--In an action under this section,
appropriate relief includes–
27 . . .
(2) damages under subsection (c) and punitive damages
28 in appropriate cases; and

9

(3) a reasonable attorney's fee and other litigation costs reasonably incurred.

(c) Computation of damages.--(1) In an action under this section, if the conduct in violation of this chapter is the private viewing of a private satellite video communication that is not scrambled or encrypted or if the communication is a radio communication that is transmitted on frequencies allocated under subpart D of part 74 of the rules of the Federal Communications Commission that is not scrambled or encrypted and the conduct is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain, then the court shall assess damages as follows:

(A) If the person who engaged in that conduct has not previously been enjoined under section 2511(5) and has not been found liable in a prior civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages of not less than $50 and not more than $500.

(B) If, on one prior occasion, the person who engaged in that conduct has been enjoined under section 2511(5) or has been found liable in a civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages of not less than $100 and not more than $1000.

(2) In any other action under this section, the court may assess as damages whichever is the greater of-
    (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or
    (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.
(Emphasis added.)

Section 2520 by its terms provides for three different measures of damages: actual damages and profits of the violator (§ 2520(c)(2)(A)), statutory damages of $100.00 per day for each day of violation (§ 2520(c)(2)(B)), or $10,000.00 if it is larger than $100.00 per day (id.).

Courts disagree about whether an award of damages is discretionary under § 2520(c)(2), which provides that the Court

10

1   "may assess" damages.[1] <u>DIRECTV v. Brown</u>, 371 F.3d 814, 818 (11th

2   Cir. 2004) (holding that an award of damages is discretionary and

3   that an award of actual damages was sufficient under the

4   circumstances); <u>Dorris v. Absher</u>, 179 F.3d 420, 427-30 (6th Cir.

5   1999) (holding that an award is discretionary but further holding

6   that the $10,000.00 figure may not be multiplied by each

7   violation of the statute because of the plain language used and

8   Congress's intent to have the $10,000.00 compensate a plaintiff

9   for all of a defendant's misdeeds under the statute arising out

10  of a closely related course of conduct that takes place over a

11  relatively short period of time); <u>Reynolds v. Spears</u>, 93 F.3d

12  428, 433-35 (8th Cir. 1996) (holding that an award is

13  discretionary); <u>Nalley v. Nalley</u>, 53 F.3d 649, 651-53 (4th Cir.

14  1995) (holding that the statute's plain language and the change

15  of verbs from "shall" to "may" renders damages discretionary);

16  <u>but</u> <u>see</u> <u>Rodgers v. Wood</u>, 910 F.2d 444 (7th Cir. 1990), <u>rehearing</u>

17  <u>denied</u> 914 F.2d 260 (7th Cir. 1990) (holding that legislative

18  history, and the absence thereof, indicates that Congress did not

19  intend to give the district courts discretion). The Court accepts

20  as appropriate the view based on the plain language of the

21  statute and comprising the weight of authority; the Court

22  concludes that an award of damages is discretionary.

23      Here, the damages Plaintiff seeks for Defendant's

24  interception, disclosure, or intentional use of wire, oral, or

25  electronic communications is $10,000.00 for each pirate access

26  device, or $20,000.00.

27  _____

28      [1]No guidance is found in cases from the Court of Appeals for
    the Ninth Circuit.

It is suggested that in determining damages, the analysis
that should be undertaken under § 2520 is as follows:

> (1) The court should first determine the amount of
> actual damages to the plaintiff plus the profits
> derived by the violator, if any. See 18 U.S.C. §
> 2520(c)(2)(A).
> (2) The court should next ascertain the number of
> days that the statute was violated, and multiply by
> $100. See 18 U.S.C. § 2520(c)(2)(B).
> (3) The court should then tentatively award the
> plaintiff the greater of the above two amounts, unless
> each is less than $10,000, in which case $10,000 is to
> be the presumed award. See id.
> (4) Finally, the court should exercise its
> discretion to determine whether the plaintiff should
> receive any damages at all in the case before it. See
> 18 U.S.C. § 2520(c)(2).

Dorris v. Absher, 179 F.3d at 430.

Here, as to actual damages, the declaration of Sichler
establishes by a preponderance that Defendant purchased DIRECTV
satellite equipment from in August 1999; Defendant activated an
account on August 11, 1999, and cancelled it on August 17, 1999.
Defendant further obtained two other DIRECTV accounts in August
1999 (which occurs when a customer purchases a DIRECTV satellite
system from an authorized DIRECTV retailer), but Defendant did
not activate them; they remained pending. Sichler's declaration
tends to show that Defendant thus had all the satellite equipment
necessary to receive Plaintiff's programming when used with the
pirate access device. Further, Sichler declares that it is common
for signal pirates to have been subscribers at some time.

The declaration of Sichler establishes that the primary use
of the devices is piracy of Plaintiff's satellite programming;
there are generally no other legitimate commercial or private
uses. Although a user of a single modified access card
theoretically has access to over a million dollars worth of

12

programming services annually (including the purchase price of
every program broadcast on each channel every day), the value of
subscription and movies viewed only once is over $150,000.00
annually. The value of programming purchased by the top ten per
cent of subscribers to a total choice premier package (a "high
end" package) is $2,748.96 annually, or $7.53 daily; Sichler
declares that persons engaged in piracy are likely to be heavy
consumers of more expensive programming. This figure does not
include allegedly significant expenses suffered by Plaintiff for
investigating and preventing piracy; no figure for such expenses
is given. Assuming that Defendant purchased a pirate access
device on March 26, 2001 (a fact deemed to be established as to
the violation because it was alleged in the complaint), and
Defendant then used the device daily since then and until April
30, 2004 (when the data stream for the particular access card was
discontinued), the total loss would be represented by 1,131 days
at $7.53 per day, or $8,516.43.

There is no evidence that Defendant profited from the use of
the access devices.

The Court concludes that although Plaintiff has presented
some evidence of likelihood that Plaintiff suffered actual harm,
the amount or extent of the harm is speculative. Plaintiff's
evidence does not establish the amount of actual damages by a
preponderance of the evidence.

As to statutory damages, Plaintiff asserts that based on
the March 26, 2001, purchase date of the pirate access devices,
Defendant has violated § 2520 for 1,131 days. Pursuant to §
2520's provision of statutory damages in the amount of $100.00

per day of violation, Plaintiff would be entitled to $113,100.00
(or, as limited by Plaintiff's demand in the complaint,
$20,000.00; see DIRECTV, Inc. v. Oliver, No. 04-3454 SBA, 2005 WL
1126786 at *6 (N.D.Cal. 2005)). Again, the Court concludes that
Plaintiff's showing as to the number of days of actual violation
is speculative; Plaintiff has not established by a preponderance
of the evidence the number of days during which the statute was
violated.

The Court thus concludes that the amount of appropriate
statutory damages under § 2520(c)(2) is $10,000.00.

Plaintiff argues that $10,000.00 should be awarded for each
of the two devices. Plaintiff represents that the authority is to
the effect that conduct in violation of the statute should be
treated as a single violation, warranting $10,000.00 for the
entire course of conduct, unless it is demonstrated that the
statute was violated for 100 or more days or the violations are
not interrelated and time-compacted. The authorities do not
support Plaintiff's characterization of the law as permitting
multiple awards of liquidated damages in circumstances such as
those of the present case. See Smoot v. United States Transp.
Union, 246 F.3d 633, 642 (6th Cir. 2001) (relying on the plain
wording of the statute and the policy to avoid rendering the
$100-per-day provision meaningless, the court held that where
eight violations occurred within a ten-month period, and a ninth
violation occurred four years after the first with disclosure
occurring in six states to eleven different persons, the
appropriate award was $10,000 because violation for more than one
hundred separate days had not been established; the statutory

14

1  damages of $10,000 should not be awarded for each separate
2  violation of the statute); <u>Dorris v. Absher</u>, 179 F.3d 420, 428
3  (6th Cir. 1999) (holding that the plain language of the statute
4  reveals that $10,000 is intended to compensate the injured party
5  "for all of the transgressor's misdeeds under the wiretapping
6  statute arising out of a closely related course of conduct that
7  takes place over a relatively short period of time"; however, the
8  court expressly did not decide the question of more long-term,
9  multiple violations presented later in <u>Smoot</u>); <u>Desilets v. Wal-</u>
10 <u>Mart Stores, Inc.</u>, 171 F.3d 711, 713-16 (1st Cir. 1999) (where
11 there were violations consisting of both interceptions and use,
12 $10,000 would not be awarded per violation because Congress
13 intended to award damages with respect to the number of days of
14 violation, not the number of violations). In view of the clear
15 wording of the statutory scheme, the fact that Defendant may have
16 purchased two pirate access devices and three sets of satellite
17 equipment does not affect the award of statutory damages.

18      Factors to be considered in determining whether to award
19 damages include whether the defendant profited by the violations;
20 whether there was evidence that the defendant actually used his
21 pirate access devices; the extent of the Plaintiff's financial
22 harm; the extent of the defendant's violation; whether the
23 defendant had a legitimate reason for his actions; whether an
24 award of damages would serve a legitimate purpose; and whether
25 the defendant was also subject to another judgment based on the
26 same conduct. <u>DIRECTV, Inc. v. Huynh</u>, 318 F.Supp.2d 1122, 1132
27 (M.D.Ala 2004).

28      Here, there is no evidence of profit on the part of

15

Defendant. There is some evidence (as distinct from facts necessarily established as true based on Defendant's default) tending to show that Defendant actually used the pirate access devices, although the extent of both the harm and the violation are uncertain. There does not appear to be a legitimate purpose for the Defendant's actions. Damages would serve the legitimate purposes of compensation and deterrence. It does not appear that Defendant is subject to another judgment based on the same conduct. Colombo declares that Defendant has not paid any part of the damages to Plaintiff. (Decl. at 2.)

The Court thus concludes that discretion should be exercised to award statutory damages of $10,000.00.

> E. <u>Entitlement to Default Judgment against One of Two Defendants</u>

Plaintiff chose to join seven defendants in this action.

At the hearing held on June 3, 2005, Plaintiff's counsel confirmed that only Defendants Robert Loomis and Pat Marino remain in the case. The bankruptcy stay regarding Defendant Marino is still in effect.

Fed. R. Civ. P. 54(b) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights

16

1    and liabilities of all the parties.

2    Plaintiff states that although Defendants Loomis and Marino
3  were sued as co-defendants, their claims are separate in the
4  sense that there is no allegation of concerted or conspiratorial
5  action; the two defendants purchased pirate access devices from
6  separate vendors on separate dates. The only similarities or
7  overlap between the two cases are the seizure of evidence from
8  the same distributor or shipper, the legal nature of the claims,
9  and some unspecified duplication of witnesses' testimony; there
10 is no assertion that the two defendants even knew each other.
11 (Supp. Memo. at 2-3.)

12   The policy concerns underlying Rule 54(b), namely, finality,
13 severability, and avoidance of piecemeal litigation, arise
14 principally in the context of the availability of appellate
15 recourse. See Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 432-
16 48 (1956); W. L. Gore & Associates, Inc. v. International Medical
17 Prosthetics Research Association, Inc., 975 F.2d 858, 862-65
18 (Fed. Cir. 1992). However, considerations of fairness and the
19 sound administration of justice are also applicable to the entry
20 of a default judgment in a case involving multiple parties or
21 claims. Further, default judgment should not be entered against a
22 defendant who is alleged to be liable jointly with other
23 defendants until the case is adjudicated against all defendants,
24 or all defendants have defaulted; the possibility of inconsistent
25 judgments must be avoided. Frow v. La Vega, 15 Wall. 552, 554-55
26 (1872) (default judgment against one defendant charged with joint
27 participation in fraud held to be improper until judgment against
28 the other defendants was adjudicated). It has been held that

17

1  despite the absence of an allegation of joint liability, entry of
2  default judgment against a single defaulting defendant is
3  improper where the defendants are similarly situated defendants,
4  even if not jointly and severally liable, and where delay is
5  necessary to avoid an inherently inconsistent result. <u>In re First</u>
6  <u>T.D. & Investment, Inc.</u>, 253 F.3d 520, 532 (9th Cir.2001)
7  (holding that default judgment should not be entered where
8  defendants participated in similar transactions such that it was
9  not logically possible that one defendant could be liable without
10 another being liable); <u>see</u> <u>Shanghai Automation Instrument Co. Ltd</u>
11 <u>v. Kuei</u>, 194 F.Supp.2d 995, 1005-10 (N.D.Cal. 2001) (collecting
12 cases and suggesting that the unifying principle is that the risk
13 of inconsistent judgments is too high, and entry of default
14 judgment against a defendant is inappropriate, where other
15 answering defendants remain in the case without their liability
16 being adjudicated, and where under the theory of the complaint,
17 liability of all the defendants must be uniform).

18      The instant case is analogous to <u>B and B Associates v.</u>
19 <u>Fonner</u>, 700 F.Supp. 7, 9-10 (S.D.N.Y. 1988), a case involving
20 enforcement of a settlement agreement, in which it was held to be
21 appropriate to enter judgment against one defendant while a co-
22 defendant was in bankruptcy. The Court reasoned that the
23 liability of the defendants was independent and completely
24 unrelated, there were no identical or closely related issues that
25 remained to be litigated against the defendant that remained in
26 the case, and it was uncertain when the bankruptcy stay would be
27 lifted. The court concluded that there was no just reason to
28 delay judgment.

1    Here, there is no factual overlap in the transactions before
2 the Court other than some similarity of subject matter. The two
3 remaining defendants' claims are severable. The two defendants
4 purchased different devices from different sources on different
5 dates. (Complt. at 3-4.) No answering defendant, who could
6 anticipate adjudication of liability on the merits, remains in
7 the case; the other defendant has also defaulted. There is no
8 evidence regarding the anticipated duration of the bankruptcy
9 stay against the other defaulting defendant. Under the
10 circumstances, the Court concludes that the risk of inconsistent
11 judgments is not appreciable, and the Plaintiff has demonstrated
12 a need to proceed to final judgment against Defendant Loomis
13 without delay.

14    The Court concludes that final judgment should be entered
15 against Defendant Loomis and that there is no just reason for
16 delay.

17        F. Attorney's Fees

18    Title 18 § 2520(b)(3) provides that in an action under that
19 section, appropriate relief includes "a reasonable attorney's fee
20 and other litigation costs reasonably incurred."

21    Generally, to determine a "reasonable" attorney fee award,
22 district courts generally start by calculating the "lodestar"
23 amount (the product of multiplying the number of hours reasonably
24 expended on the litigation by a reasonable hourly fee). See
25 Hensley v. Eckerhart, 461 U.S. 424, 433-437 (1983); City of
26 Burlington v. Dague, 505 U.S. 557, 561 (1992). It is the burden
27 of the party seeking the award to submit evidence supporting the
28 hours worked and rates claimed, and when the documentation of

19

hours is inadequate, a court may reduce an award accordingly. Hensley, 461 U.S. at 433, 437. A party requesting a fee award has the burden of presenting detailed records of the time spent, so that the judge can make a fair evaluation of the amount of fees warranted. The records should be comparable to those that a private attorney would present to a client to substantiate a fee. Evers v. Custer County, 745 F.2d 1196, 1205 (9th Cir. 1984), citing Hensley v. Eckerhart, 461 U.S. 424. The minimum required for satisfaction of this burden is to list hours and identify the general subject matter of the time expenditures. Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000). Fee awards will be set aside where summaries make it very difficult to ascertain whether the time devoted to particular tasks was reasonable and whether there was improper overlapping of hours. Intel Corp. v. Terabyte Intern., Inc., 6 F.3d 614, 623 (9th Cir. 1993).

The initial declaration of attorney Colombo was unclear as to what services concerning Defendant were being billed, and the attached billing summaries did not clearly correspond with the declaration with respect to tasks billed, persons performing the work, or hourly rate. The Court permitted clarification. In a supplemental declaration, attorney Tran clarified that legal bills (apparently with respect to work other than that relating to the application for default judgment) from both previous and present counsel reflected 15.3 hours billed for prosecution of Plaintiff's claims against all seven defendants originally named in the complaint; another .9 hours was directly attributable to prosecution of claims against Defendant Loomis specifically. Thus, the total amount of feels billed to Plaintiff for the case

1  have been divided by seven for services that allegedly relate to
2  all seven defendants. Although it might be reasonable and fair to
3  divide drafting the complaint into fractions, some of the other
4  tasks (which include investigating evidentiary issues; analyzing
5  evidence; preparing for, scheduling, and appearing at case
6  management conference; maintaining and managing a pretrial
7  calendar; maintaining an accurate and up-to-date defendant file;
8  correspondence between law firms; drafting of case summaries; and
9  contact with Plaintiff regarding case status) do not appear to be
10 necessarily subject to a fair or reasonable division on a per-
11 defendant basis. One attachment to the Colombo declaration
12 indicates that persons whose initials did not correspond to
13 Colombo's drafted the complaint; the time is set forth, but the
14 appropriateness of the hourly rate of the unknown persons is not
15 established. It is unclear which attorney at which rate completed
16 the .9 hour of services attributable solely to Defendant Loomis
17 or what those services were. Although Colombo states that hours
18 relating to all seven defendants were divided in seven, from the
19 billing summaries submitted it is unreasonably difficult to
20 determine which time or work is claimed to have related to
21 Defendant Loomis or to have been included in the pool of tasks
22 divided; there is no underlining or highlighting or other
23 indication of which hours were included. The supplemental
24 declaration of attorney Tran does not clarify this, and thus
25 there is no adequate explanation or documentation of the billing.
26 Thus, the Court is unable to determine whether the time or rates
27 claimed were actually reasonable. Plaintiff has not provided
28 clear and simple summaries, adequately annotated, in order to

21

1  demonstrate what matters are included in the present claim, the
2  matters performed, the identity of the attorney, the hourly rate,
3  and the relationship of these matters to the present Defendant,
4  who defaulted and apparently has not been in communication with
5  any of Plaintiff's attorneys. Therefore, none of these fees
6  should be awarded.

7      Colombo states that with respect to the present motion, she
8  spend 1.5 hours reviewing and revising the motion and its
9  accompanying documents; her billing rate is $255.00, which is
10 reasonable pursuant to her declaration. This time was time
11 relating to the case against Defendant Loomis, and the rate and
12 amount of time was reasonable. The sum of $382.50 for this work
13 should be awarded.

14     Plaintiff claims 3.5 hours for Michelle Stone, a paralegal,
15 for preparation of the motion for default judgment. Stone's
16 declaration covers her qualifications and training in detail,
17 indicates she was instructed to prepare a notice of motion and
18 various documents, and summarizes the facts and evidence she
19 obtained to use in preparing the motion for default judgment.
20 However, Stone does not actually say she prepared the motion,
21 state how much of her time was spent, or give any basis for a
22 conclusion as to the reasonableness of the $135.00 per hour
23 figure that is claimed for her services. Colombo's declaration
24 indicates that Stone spent approximately 3.5 hours preparing the
25 motion and accompanying documents; she does not state the source
26 of her knowledge. Tran declares that Suzanne M. Burke directed
27 Stone to analyze the issues and draft a motion and documents, and
28 that Stone was being supervised by Colombo, an associate, and by

Pandher, an independent contract attorney. There is no indication that Stone's fee was billed to the client. Colombo claims that Michelle Stone spent approximately 3.5 hours preparing the motion and documents for Colombo's review, and that Stone's hourly rate is $135.00. It further appears that the rates were set to be competitive with comparative rates in the pertinent community.

Under 42 U.S.C. § 1988, a sufficiently analogous statute which provides for a reasonable attorney's fee as part of the costs, it is established that paralegal time is included in the work product of an attorney. <u>Missouri v. Jenkins</u>, 491 U.S. 274, 285 (1989). Paralegal time should be compensated at the prevailing market rate in the relevant community, i.e., as calculated on the basis of rates and practices prevailing in the relevant market. <u>Id.</u> at 285-289. If billing separately for paralegal services is found to be customary and reasonable in the relevant community, then an award may be made.

Here, the amount of time is reasonable in light of the tasks performed; the rate is reasonable. The sum of $472.50 should be awarded.

Colombo's initial estimate for time spent in preparing for and appearing telephonically at the hearing on the motion is superseded by Tran's declaration that he spent 2.6 hours at $215.00 per hour in preparation and appearance. The Court should award $559.00 as reasonable compensation for these services.

It is established by declaration that counsel spent 6.5 hours researching and preparing the supplemental memorandum at $275.00 per hour. The Court finds this reasonable and concludes that $1,787.50 should be awarded for these services.

23

1    No award should be made for preparation for and attendance
2 at the hearing that was set for July 1, 2005, and was vacated.

3    In summary, the Court finds the number of hours and rates,
4 as analyzed above, to be reasonable in light of all pertinent
5 factors, and finds that an award of $3,201.50 as attorney's fees
6 would be reasonable.

7    The Court does not consider an award of costs because
8 Plaintiff will proceed to tax costs pursuant to Rule 54(d).

9    G. <u>Recommendation</u>

10    Accordingly, it IS RECOMMENDED that

11    1. Plaintiff's motion for entry of default judgment BE
12 GRANTED in part; and

13    2. It being appropriate, and there being no just reason for
14 delay, the Clerk BE DIRECTED TO ENTER DEFAULT JUDGMENT for
15 Plaintiff DIRECTV against Defendant Robert Loomis as follows:

16         a. Pursuant to 18 U.S.C. § 2520, statutory damages in
17 the amount of $10,000.00, with post-judgment interest thereon at
18 the legal rate pursuant to 28 U.S.C. § 1961 from the date of
19 entry of the judgment; and

20         b. Attorney's fees in the amount of  $3,201.50.

21    This report and recommendation is submitted to the United
22 States District Court Judge assigned to the case, pursuant to the
23 provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the
24 Local Rules of Practice for the United States District Court,
25 Eastern District of California. Within ten court days after being
26 served with a copy, any party may file written objections with
27 the Court and serve a copy on all parties. Such a document should
28 be captioned "Objections to Magistrate Judge's Findings and

1  Recommendations." Replies to the objections shall be served and
2  filed within ten (10) <u>court</u> days (plus three days if served by
3  mail) after service of the objections. The Court will then review
4  the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636
5  (b)(1)(C). The parties are advised that failure to file
6  objections within the specified time may waive the right to
7  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d
8  1153 (9th Cir. 1991).

9

10 IT IS SO ORDERED.

11 **Dated:   July 6, 2005**                          **/s/ Sandra M. Snyder**
   icido3                                UNITED STATES MAGISTRATE JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28